UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAMELA A. KING,

                         Plaintiff,

              -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; MICHAEL STANZIONE,
PRINCIPAL, HIGH SCHOOL OF
ECONOMICS AND FINANCE; and
YEVGENIA VALIT, ASSISTANT
PRINCIPAL, HIGH SCHOOL OF
ECONOMICS AND FINANCE,

                         Defendants.

**OPINION & ORDER**

23-cv-7622 (ER)

RAMOS, D.J.:

        Pamela King brings this action *pro se* against the New York City Department of
Education (the "Department"), Michael Stanzione, and Yevgenia Valit, the principal and
assistant principal, respectively, of the High School of Economics and Finance ("HSEF")
(collectively "Defendants").  Doc. 18.  She alleges that the Defendants created a hostile
work environment for older female school staff, including herself, assigned her an
overwhelming and retaliatory course load, denied her disability accommodations, and
discriminated against her because of her sex, age, and disability in violation of federal
and state law.

        Pending before the Court is the Defendants' motion to dismiss the amended
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 21.  For the
reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

### A.  Factual Background

        King was born in March 1945 and has been working for the Department at the
HSEF since October 1996 teaching English as a Second Language ("ESL").  *See* Doc. 18
at ¶¶ 1–2.  King suffers from a visual disability caused by the chemotherapy she had to

undergo for cancer she contracted due to her proximity to Ground Zero after the attacks of September 11, 2001. *Id.* at ¶ 3. She has been registered as legally blind with the New York State Commission for the Blind since December 2021. *Id.* at ¶ 4.

In November 2019, King filed a complaint with the New York State Division of Human Rights ("NYSDHR") against the Department, alleging age and gender discrimination. *Id.* at ¶ 8. In the complaint, King alleged that the HSEF administration created a hostile work environment for the older female staff. Specifically, she alleged that the administration treated older female staff poorly, screamed at them in an "abusive and violent manner," and issued them unjustified disciplinary letters. *Id.* at ¶ 8. She asserted that the administration only denied tenure to female teachers, while no male teachers were denied tenure. *Id.* King alleged that the administration removed her from her acting librarian position and that during the 2019-2020 school year, the administration removed her from the classroom where she had been teaching for 22 years. *Id.*

On March 13, 2020, the Department moved to remote work for the remainder of the school year as a result of the COVID-19 pandemic. *Id.* at ¶ 9. During the 2020-2021 school year, King received a medical accommodation to work remotely due to her cancers.[1] *See id.* at ¶ 10. King alleges that in June 2021, Stanzione did not acknowledge her contributions to a project that resulted in the creation of The Virtual Tour of New York State curriculum plan even though he praised other teachers for their hard work during the remote learning schoolyear. *Id.* at ¶ 11.

King returned to in-person teaching in September 2021. *Id.* at ¶ 12. Upon her return, she had a disciplinary meeting with Stanzione and Valit regarding an allegation that she screamed at Marilyn Rosado ("Ms. Rosado"), an administrator in the main office with no decision-making power over King. *Id.* at ¶ 13. Without specifying which letters

---

[1] King's allegations as to the number of cancers she developed vary throughout her pleadings. King variously alleges that she developed 7 different cancers (Docs. 18 at 8 and 24 at 9), 5 (Doc. 18 at 23), and 3 (Doc. 1-1 at 3).

she is referring to, King asserts that "[t]he administration ultimately removed these letters from [her] file." *Id.*

King alleges that Marcia Davis, the school's health aide, informed her that Ms. Rosado had complained about her, saying that "[King] is old.  She should retire.  She cannot see very well, and she makes too much money."  *Id.* at ¶ 14.  Citing the proximity of Ms. Rosado's office to Stanzione's office, King alleges that she "believe[s]" Ms. Rosado heard similar comments about her from Stanzione.  Doc. 24 at 10.  King also alleges that retired librarian Alicia Conklin overheard Stanzione make a related comment to former Assistant Principal Raj Nanda:  "Pamela costs too much." [2]  Doc. 1-2 at 1.

During the June 2022 graduation ceremony, Stanzione allegedly told King that he thought that she was retiring that year.  Doc. 18 at ¶ 16.  As a result, King believes that Stanzione did not "harass" her during the 2021-2022 school year because he believed that she was retiring at the end of the year.  *Id.*

King alleges that since the beginning of the 2022-2023 school year, Stanzione and others in the administration have subjected her to continuous age-based discrimination in an attempt to make her retire.  *Id.* at ¶ 17.  King was assigned to teach 5 preparatory periods, which she alleges is far more than any other teacher at HSEF.  *Id.* at ¶ 18.  She asserts that she was required to read four books, prepare lesson plans for five different classes, and collaborate with three other teachers in preparing their lesson plans.  *Id.*  This meant that King had to read fifteen books during the 2022-2023 academic year, which she alleges was difficult for her given her visual disability.  *Id.*; *see also* Doc. 24 at 11. Notwithstanding the stress that this excessive workload caused King, she completed her work.  Doc. 18 at ¶ 18.

---

[2] In her opposition brief, King alleges that Stanzione said "Dr. King needs to retire.  She is ruining my budget."  Doc. 24 at 4.  However, the second part of that statement is not specifically alleged in the complaint.  King alleges that Stanzione said something "to that effect," suggesting that King was too expensive given her tenure and seniority.  Doc. 18 at ¶ 14.

In September 2022, King alleges Stanzione assigned her to collaborate with two other English teachers for a Circular 6 assignment,[3] which required even more work. *Id.* at ¶ 19. According to King, Stanzione did not let her choose her Circular 6 assignment even though teachers are normally allowed to do so. *Id.* at ¶¶ 19, 23. King alleges that Ms. Lundberg, one of the teachers with whom she had to collaborate, did not want to meet in person, so she held the meeting over Google Chat instead. *Id.* at ¶ 20. King had difficulty reading quickly due to her visual disability and could not keep up with the Google Chat messages during the meeting. *Id.* When King expressed she disagreed with the rules discussed at the meeting because she had not had time to read them, the meeting was suspended. *Id.*

King let the school administration, including Valit, know that she required a special reading device due to her visual disability in March 2022. Doc. 18 at ¶ 15. On September 29, 2022, King emailed Stanzione requesting a disability accommodation for her visual impairment. *Id.* at ¶ 21. King requested to lead a different Circular 6 assignment because her visual disability prevented her from completing the amount of reading required by her current assignment. *Id.* at ¶¶ 20–21. The next day, Stanzione denied her requesting, writing, "Your professional period assignment for [Circular] 6 remains in effect at this time." *Id.* at ¶ 22. King asserts that when she met with Stanzione on December 15, 2022 to discuss her change request, Stanzione assumed that her request was based on technology issues. *Id.* at 75. King alleges that once Stanzione saw her doctor's letter describing her disability, she was no longer required to participate in the Google Chat, and Stanzione said that he would not require King to do anything on Google Chat anymore. *Id.* at ¶ 22, 76.

---

[3] King explains that "Circular 6 is a contractually required assignment of an additional work period each day among a list of activities one can choose (ex: being in the cafeteria to help keep order; manning the front door for students going out to lunch). By union contract, each teacher gets to choose a Circular 6 assignment." Doc. 18 at ¶ 19.

On October 4, 2022, she received a notice for a disciplinary meeting with Valit for sending an email during a class. *Id.* at ¶ 24. King alleges that her students had not yet arrived at class when she sent the email. *Id.* Seven days letter, Valit gave her a disciplinary letter for slamming a door. *Id.* at ¶ 25. The next day, King received the third disciplinary letter for being 15 minutes late to class. *Id.* at ¶ 26. King alleges that these letters were unwarranted, denies these allegations, and asserts that other teachers were not disciplined for similar conduct. *Id.* On October 21, 2022, King received a fourth disciplinary letter—this time from Stanzione—for allegedly yelling at a child who entered the classroom when she was in the middle of a meeting. *Id.* at ¶ 27.

King alleges that that same day, Valit gave her an unjustified observation report rating her "ineffective" in three categories and "developing" in two categories for an observation he conducted on October 13, 2022. *Id.* at ¶ 30. King alleges that this was the worst observation report of her career and that it had a negative impact on her end-of-year rating, which affects her ability to qualify as a substitute teacher for a year. *Id.*

On November 8, 2022, King filed a second complaint with the NYSDHR based on age- and disability-based discrimination. *Id.* at ¶ 31.

King alleges that on November 15, 2022, her colleague, Ms. Lundberg, told her she had had a meeting with Stanzione on November 10, 2022 where Stanzione allegedly said, "Dr. King needs to retire." *Id.* at ¶ 32.

On November 22, 2022, King had a disciplinary meeting with Stanzione to discuss "inappropriate behavior" towards Ms. Lundberg. *Id.* at ¶ 33. Subsequently, Stanzione sent King a disciplinary letter, dated November 30, 2022, claiming that she harassed Ms. Lundberg. *Id.* King believes that Stanzione retaliated against her by trying to get Ms. Lundberg to file a police report against her and get her arrested for harassment. *Id.* King asserts that she lost workdays, salary, and cumulative absence reserve ("CAR") days as a result of the excessive workload and Stanzione's alleged attempt to get her arrested. *Id.* at ¶ 33–34.

On December 2, 2022, King received another disciplinary letter from Valit for being late to class on November 21, 2022.  *Id.* at ¶ 36.

On December 27, 2022, King filed her third NYSDHR complaint, which alleged discrimination based on disability, age, gender, retaliation, and hostile work environment. *Id.* at ¶ 37.  King alleges that she requested that her complaints be withdrawn based on administrative convenience, but she does not specify when she made these requests.[4]  *Id.* at ¶ 38.

King alleges that on April 28, 2023, Valit observed her classroom, rating her "ineffective" in one category and "developing" in three categories.  *Id.* at ¶ 39.  King claims that she ended up in the hospital on June 12, 2023 due to stress and "exacerbated health conditions."  Doc. 18 at ¶ 54.  Subsequently, on June 22, 2023, King received an overall "developing" rating on the Measures of Teacher Practice ("MOTP") from Valit even though she received an "effective" rating on the Measures of Student Learning ("MOSL") for the school year.  *Id.* at ¶ 40.

King alleges that during the 2023-2024 school year, she was assigned an excessive workload of five preparatory periods in different subjects and had to make twenty-five lesson plans each week.  *Id.* at ¶ 41.  On November 9, 2023, Valit informally observed King and rated her "ineffective" in six categories and "developing" in two categories.  *Id.* at ¶ 42.  Valit did not schedule a post-observation conference to discuss the ratings with King as was customary.  *Id.*  King alleges that on December 11, 2023, Stanzione observed her classroom and rated her "ineffective" in three categories, "developing" in one category, and "effective" in one category.  *Id.* at ¶ 43.  King alleges

---

[4] While King alleges that she requested her *complaints* to be withdrawn based on administrative convenience, the NYSDHR did reach a determination her two prior complaints.  Specifically, King's first complaint was dismissed on grounds of administrative convenience because "[King] intend[ed] to pursue federal remedies in court.  Doc. 21-2, Decl. of Shinequa Charles, Ex. 1, NYSDHR Case No. 10205382. King's second complaint was dismissed because NYSDHR determined that there was no probable cause to believe that the Department engaged in an unlawful discriminatory practice.  *See id.*, Ex. 2, NYSDHR Case No. 10220999.  The third complaint was dismissed because the allegations were deemed to be repetitive of the allegations in the second complaint.  *See id.*, Ex. 3, NYSDHR Case No. 10222065.

that this observation was in violation of her contract, which allows only one observation per semester for an effective tenured teacher. *Id.* This observation was subsequently removed from her file. *Id.* King alleges that on May 23, 2024, Valit observed her and rated her "ineffective" in four categories, which King again disputed. *Id.* at ¶ 45. On June 21, 2024, Stanzione gave her a disciplinary notice regarding an allegation of verbal abuse. *Id.* at ¶ 46. On June 24, 2024, King received an overall "ineffective" MOTP score for the 2023-2024 school year even though her students passed the regents exams. *Id.* at ¶ 47. King alleges that prior to filing her NYSDHR complaints, she had consistently received "effective" teaching ratings. *Id.* That summer, on July 25, 2024, King received a disciplinary letter containing allegations of verbal abuse and threatening her termination. *Id.* at ¶ 48. King does not specify who this letter was from.

King alleges that Stanzione denied her teaching preferences for the 2024-2025 school year and assigned her to teach two junior English classes, making her courseload more difficult. *Id.* at ¶ 49. King also asserts that on September 3, 2024, she received a disciplinary notice falsely alleging that she was observed sleeping in the cafeteria on June 18, 2024. *Id.* at ¶ 51. On September 6, 2024, King received another disciplinary notice for allegedly sleeping in the cafeteria. *Id.* at ¶ 51–52.

Since the filing of her amended complaint on September 6, 2024, King received additional disciplinary letters from the administration. Doc. 26 at 1. Specifically, King alleges that, on May 9, 2025, the administration held an arbitration regarding her "developing" rating for the 2023-2024. *Id.* On May 10, 2025, Defendants began a 3020a proceedings against King, seeking to terminate her tenure. *Id.* King alleges that these actions constitute retaliation against her for the complaints she filed. *Id.*

King continues to be employed by the Department and is at the top of the Department's salary scale. Doc. 21 at 26; *see also* Doc. 18, Ex. A.

### B.  Procedural History

King filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 15, 2023.  Doc. 18 at 6.  The EEOC issued her a notice of dismissal and right-to-sue letter on June 21, 2023.  *Id.*

King filed the instant action on August 28, 2023, and amended her complaint on September 6, 2024.  The amended complaint asserts six claims:  (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 ("ADEA"); (3) disability discrimination in violation of the Rehabilitation Act of 1974, 29 U.S.C. §§ 701–96 ("RA"); (4) disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101–213 ("ADA"); (5) sex, age, and disability discrimination in violation of the New York State Human Rights Law, New York Executive Law §§ 290–297 ("NYSHRL"); and (6) gender, age, and disability discrimination in violation of the New York City Human Rights Law, New York City Administrative Code §§ 8-101–131 ("NYCHRL").  Doc. 18.

The Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 7, 2024 arguing that King's NYSHRL and NYCHRL claims are outside the statute of limitations, that she elected to have her claims heard before the NYSDHR, that her federal claims are time-barred, that she failed to state a claim with respect to each of her causes of action, and that there can be no individual liability for the individually named Defendants.  Doc. 21.

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss Pursuant to Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir.

2013).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555(2007)).  To satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### B.  *Pro Se* Plaintiff

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir.2011), and to interpret the claims as raising the strongest arguments that they suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006) (citations omitted); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010) (citing *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir.2010)).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue."  *Jackson v. NYS Dep't of Labor*, 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

III.    DISCUSSION

King asserts claims of sex, age, and disability discrimination, and retaliation pursuant to Title VII, the ADEA, the ADA, the RA, NYSHRL, and NYCHRL.  For the reasons set forth below, the Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**A.  Individual Liability**

*1.  Stanzione and Valit cannot be subject to a suit under Title VII, the ADEA, the ADA, or the RA.*

Title VII, the ADEA, the ADA, and the RA do not provide for individual liability. *See Cayemittes v. City of NY Department of Housing Preservation & Development*, 641 F. App'x. 60, 61–2 (2d Cir. 2016) (affirming the dismissal of plaintiff's Title VII claims, as the statute does not provide individual liability); *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order) (noting that the ADEA does not "subject[ ] individuals, even those with supervisory liability over the plaintiff, to personal liability"); *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (holding that the ADA does not provide for individual liability in the context of employment discrimination); *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that the RA does not provide for individual liability).

The Court therefore dismisses the Title VII, ADEA, ADA, and RA claims against Stanzione and Valit.

**B.  The NYSHRL and NYCHRL Claims Are Barred.**

King's NYSHRL and NYCHRL are barred due to her failure to comply with the applicable notice of claim requirements and by the election of remedies doctrine.

*1.  Notice of Claim*

New York Education Law § 3813 requires potential plaintiffs to file a notice of claim with the governing body of the applicable school district within 90 days of claim accrual before commencing a lawsuit.  This requirement applies to all claims "against any teacher or member of the supervisory or administrative staff or employee where the

alleged tort was committed by such teacher or member or employee acting in the discharge of his duties within the scope of his employment…." N.Y. Educ. L. § 3813(2). Notice of claim requirements "are construed strictly by New York state courts," and failure to comply with these requirements "ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hospital Corporation*, 164 F.3d 789, 793–94 (2d Cir. 1999) (internal quotation marks and citations omitted). Here, King does not allege compliance with the notice of claim requirement of § 3813 in the amended complaint nor in her subsequent briefing. *See* Doc. 24 at 9; Doc. 25 at 2. While she does argue that she provided sufficient notice of her claim when she filed the second and third NYSDHR complaints, this does not satisfy the strict requirements of § 3813— that is, providing precise notice of claims, proper service on the governing board, and compliance with statutory deadlines. *See Hatcher v. NY City Department of Education*, No. 23-cv-3510 (NRM) (LB), 2024 U.S. Dist. LEXIS 176016, at *8 (E.D.N.Y. Sep. 27, 2024). Therefore, King's NYSHRL and NYCHRL claims must be dismissed.

> *2. Election of Remedies*

King's claims under NYSHRL and NYCHRL are further barred by the election of remedies doctrine. The NYSHRL provides, in relevant part, as follows:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages…and such other remedies as may be appropriate…*unless such person had filed a complaint hereunder or with any local commission on human rights*....

N.Y. Exec. Law § 297(9) (McKinney) (emphasis added). The same is true of the NYCHRL. *See Williams v. City of N.Y.*, 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013) (noting that under the NYCHRL, "the remedies of administrative review through the [NYSDHR or the NYCCHR] or judicial review are mutually exclusive[.]"). This means that a plaintiff seeking to bring a discrimination claim under the NYSHRL or NYCHRL is given a choice: she can either proceed in court or pursue an administrative complaint before a local human rights commission—but she cannot do both. *Levi v. RSM*

*McGladrey, Inc.*, No. 12-cv-8787 (ER), 2014 WL 4809942, at *9–10 (S.D.N.Y. 2014); *see also York v. Association of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002) ("[B]y the terms of the statute…, [NYSHRL] claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." (citing *Moodie v. Federal Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995))); *Fitzgerald v. Signature Flight Support Corporation*, No. 13-cv-4026 (VB), 2014 WL 3887217, at *5 (S.D.N.Y. Aug. 5, 2014) ("[O]nce a plaintiff elects to pursue his claims before the NYSDHR, a federal district court is barred from later hearing his case.").

There are two exceptions to the election of remedies rule. *See Skalafuris v. City Univ. of N.Y.*, No. 09-cv-5693 (SAS), 2010 WL 1050299, at *2 (S.D.N.Y. 2010), *aff'd sub nom. Skalafuris v. City of N.Y.*, 444 F. App'x 466 (2d Cir. 2011). The first exception applies when the NYSDHR dismisses the claim for administrative convenience, and the second applies when the claim is filed with the NYSDHR only by way of an automatic referral from the EEOC. *See York*, 286 F.3d at 127 n.2.

Neither exception applies here. In this case, King filed her first NYSDHR complaint on December 4, 2019, and it was dismissed on administrative convenience grounds on June 16, 2020. *See* Doc. 21. Ex. A; Decl. of Shinequa Charles, Ex. 1, NYSDHR Case No. 10205382. King subsequently filed two more NYSDHR complaints—one on November 8, 2022 and the other on December 29, 2022. *See id.*, Ex. 2, NYSDHR Case No. 10220999; *Id.*, Ex. 3, NYSDHR Case No. 10222065. King alleges that she requested that her complaints be withdrawn based on administrative convenience, *see* Doc. 18 at ¶ 38, but the complaints were never withdrawn. The second complaint was dismissed for lack of probable cause, and the third was dismissed on the grounds that it asserted allegations that were repetitive to the second complaint. *See id.*, Ex. 2, NYSDHR Case No. 10220999; Ex. 3, NYSDHR Case No. 10222065. King therefore filed all three of her NYSDHR complaints *before* beginning this federal action on August 28, 2023. Her election of remedies therefore divested this Court of jurisdiction

over her NYSHRL and NYCHRL claims.  Accordingly, those claims are dismissed with prejudice.

### C.  The Title VII, ADA, ADEA, and RA Claims were Timely, and Her Time-Barred Allegations Serve as Background Information.

Generally, plaintiffs have 300 days from when the allegedly discriminatory events took place to file an action.  *See* 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); 29 U.S.C. § 626(d)(1)(B).  However, even with respect to claims of discrete discriminatory acts, employees can use evidence outside of the relevant time period to support their claims, and this evidence will be considered background information.  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *Rosen v. N.Y.C. Department of Education*, No. 18-cv-6670 (AT), 2019 WL 4039958, at *4 (S.D.N.Y. Aug. 27, 2019) (same).  Where a plaintiff "complains of discrete discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,'" acts that occurred prior to the start of the 100-day period are not actionable even though "they may be 'related to' acts that occurred within the permissible 300-day period." *Id.*

Here, King filed her second NYSDHR complaint on November 8, 2022.  As such, any claims that accrued prior to January 12, 2022 (300 days prior to November 8, 2022), are barred by the applicable statute of limitations.  *See* 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); 29 U.S.C. § 626(d)(1)(B).  However, since King's complaint does not include allegations of "discrete discriminatory or retaliatory acts," all the events that occurred prior to January 8, 2022 can serve as background information to support any of the claims that accrued after the 300-day period.  *See* Doc. 18 at ¶¶ 15–54.  Therefore, even though many of the allegations King uses to support her Title VII,[5] ADA, ADEA, and RA claims

---

[5] Defendants allege that King's Title VII sex discrimination claim must be dismissed because she failed to exhaust her administrative remedies in her NYSDRH/EEOC joint complaint dated November 8, 2022. Although King failed to check the sex discrimination box in that complaint, she did explicitly reference the NYSDHR complaint filed in November 2019 in that filing. Accordingly, she exhausted her administrative remedies, so the Title VII complaint is not dismissed on these grounds.

are time-barred, they serve as background information to support her otherwise timely claims.

### D. King Fails to State a Discrimination Claim Under Title VII and the ADA, but She Successfully States an ADEA Discrimination Claim.

Employment discrimination claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id.* at 802–03. If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* at 803. Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase" of the case. *Id.* at 311. Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a *prima facie* case.

#### 1. King's Title VII Claim Fails but her ADEA Claim Survives.

To establish a *prima facie* case of discrimination under either Title VII or the ADEA, the plaintiff must show that (1) she belongs to a protected class, for a claim under Title VII, or is within the protected age group, for a claim under the ADEA; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

The parties do not dispute the first two prongs of this test, so only the last two factors require analysis. The third factor—whether the plaintiff suffered an adverse

employment action—favors King at this juncture. The assignment of "a disproportionately heavy workload" can constitute an adverse employment action. *Feingold*, 366 F.3d at 152-53; *see also Vega v. Hempstead Union Free School District*, 801 F.3d 72, 85 (2d Cir. 2015). For example, in *Vega*, the Second Circuit found that a teacher adequately pleaded adverse action, where "he was forced to spend disproportionately more time preparing for his classes and therefore experienced a material increase in his responsibilities without additional compensation." *Id.* Here, like the teacher in *Vega*, King was forced to do disproportionately more work without receiving a pay increase. King alleges that for the 2022-2023 school year, she had 5 preparatory periods even though most teachers were only responsible for 2 preparatory periods. Doc. 18 at ¶ 18. King asserts she was required to read 15 books during the school year whereas other teachers were only required to read 8 books. *Id.* This is a relatively heavier workload that can constitute an adverse employment action, so King succeeds on the third factor.

With respect to her ADEA claim, King succeeds the fourth factor because she plead enough facts to support the inference that the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. For age discrimination claims under the ADEA, there only has to be a minimal inference that age was the "but for cause" of the adverse action. *Marcus v. Leviton Manufacturing Co., Inc.*, 661 F. App'x 29 (2d Cir. 2016). The "but-for" standard of adverse employment is "not equivalent to a requirement that age was the employer's only consideration, but rather that the adverse employment action would not have occurred without it." *Delaney v. Bank of America Corporation*, 766 F.3d 163, 168–69 (2d Cir. 2014). In her amended complaint, King alleges she is 79 years old, and her allegations support an inference that she suffered those adverse actions *because of* her age. For example, King claims that

Stanzione stated, "Dr. King needs to retire." and "I thought you were retiring this year."[6]
*See* Doc. 18 at ¶¶ 14, 16.  At this juncture, these comments indicate that King—being 79
years old—was singled out because she was past the retirement age, and they support an
inference that age was the but-for cause of at least one of the adverse employment actions
she experienced.  As such, Defendants' motion to dismiss as to King's ADEA
discrimination claim is DENIED.

However, King did not plead facts to support the inference that the adverse
employment actions happened *because of* her sex.  As such, her Title VII discrimination
claim is dismissed.

2. *King's ADA Claim Fails.*

To establish a *prima facie* case of discrimination under the ADA, the plaintiff
must demonstrate that (1) her employer is subject to the ADA; (2) she is disabled within
the meaning of the ADA; (3) she was qualified to perform the essential functions of the
job with or without reasonable accommodation; (4) she suffered an adverse employment
action; and (5) the adverse action occurred under circumstances giving rise to an
inference of discriminatory intent.  *See Davis v. N.Y.C. Department of Education*, 804
F.3d 231, 234-35 (2d Cir. 2015).  In the context of disability discrimination arising from a
failure to accommodate, a plaintiff must show that with reasonable accommodation, he
could perform the essential functions of the job at issue and that the employer refused to
make such accommodations.  *McBride v. BIC Consumer Products Manufacturing Co.*,
583 F.3d 92, 97 (2d Cir. 2009) (quoting *Rodal v. Anesthesia Group of Onondaga, P. C.*,
369 F.3d 113, 118 (2d Cir. 2004)) (internal quotation mark omitted).

Here, King's discrimination claim fails because she does not allege that Stanzione
or Valit were motivated in any way by her visual disability.  Throughout her amended
complaint and opposition memorandum, King describes numerous times when Stanzione

---

[6] The comments by her other coworkers, including Ms. Rosado, are not relevant because Ms. Rosado was
not in a position to make any decisions over King's employment.  Doc. 18 at ¶ 13.

allegedly treated her unfairly, when the administration gave her negative feedback or disciplinary letters, spoke to her in an abusive tone, and reprimanded her. *See* Doc. 18 at ¶¶ 8–54; Doc. 24 at 16–17.  She also alleges that the ongoing discrimination, retaliation, and hostile work environment exacerbated her health conditions, and she has had to pay for stress-related medical care. *See* Doc. 18 at ¶ 54.  She claims that she ended up in the hospital on June 12, 2023 due to her "exacerbated health conditions." *Id.*  She also alleges that her visual disability made it hard to meet the requirements of her Circular 6 assignment, but she admits that after providing a doctor's note, she was no longer required to participate in the Google Chat.  Doc. 25 at 14.  However, she never alleges that Stanzione or Valit mistreated or abused her *because* she had a visual disability, and thus fails to allege a *prima facie* case of ADA discrimination.

Accordingly, to the extent King alleges that the administration's conduct amounts to discrimination under the ADA, the motion to dismiss is GRANTED.

### E.  King Has Sufficiently Plead a Hostile Work Environment Claim.

To establish a hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult…that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis-Garett*, 921 F.3d at 41 (citations and internal quotation marks omitted).  "The determination of hostility depends on whether a reasonable person would find the work environment to be hostile and whether plaintiffs subjectively perceived it to be so." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (citation omitted).  Generally, incidents creating a hostile work environment must be "sufficiently continuous and concerted to be considered pervasive." *Id.* (citation omitted).  "A plaintiff must also demonstrate that [the plaintiff] was subjected to the hostility because of…membership in a protected class." *Id.* (citation omitted).  Hostility should be assessed on the totality of the circumstances. *Trachtenberg v. Department of Education of City of New York*, 937 F. Supp. 2d 460, 472 (S.D.N.Y. 2013)

(quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).  Additional factors that may be considered in assessing claims of a hostile work environment include "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating ... and (4) whether it unreasonably interferes with an employee's work performance."  *Id.* (citation omitted).

Here, King's allegations of hostile work environment include an excessive workload, poor teacher evaluations, one-off disrespectful comments from some of her co-workers, being removed from the temporary position of acting librarian, and receiving disciplinary letters—none of which are "sufficiently pervasive" to support a hostile work environment claim.  *See* Doc. 18 at ¶¶ 18–49; *Trachtenberg*, 937 F. Supp. 2d at 473 (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir 2007); *Robins v. New York City Bd. of Educ.*, No. 07-cv-3599 JGK KNF, 2010 WL 2507047, at *12 (S.D.N.Y. June 21, 2010), *aff'd*, 606 F. App'x 630 (2d Cir. 2015) (determining that the plaintiff had not been subjected to a hostile work environment when her supervisors were simply evaluating her performance in classroom visits and there was no evidence of discriminatory comments or physical acts).

Courts also consider whether the employee suffered an adverse employment action.  To meet the adverse employment action requirement, a plaintiff only needs to show "some harm respecting an identifiable term or condition of employment"—*i.e.*, the plaintiff must have been "left [ ] worse off" but not necessarily "significantly so." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355, 359 (2024).  Here, even though King continues to be a full-time ESL teacher, has not been demoted, and has been at the top of the salary scale since at least November 2019, some of the administration's actions—including the disproportionately heavy workload—can constitute adverse employment actions.  *See* Doc. 18, Ex. A.  Therefore, the Department's actions can be considered an adverse action even though they did not constitute a setback to the King's career.

For the same reasons that her ADEA claim survives, King has also sufficiently alleged that she was subjected to hostility *because of* her age. Her amended complaint includes two statements about her age and being questioned about her retirement plans in at least two instances. *See* Doc. 18 at ¶¶ 13–16. These allegations are sufficient to support King's allegation that she was subjected to a hostile work environment, at least in part, *because of* her age.

### F.  King Fails to Plead She was Denied a Reasonable Accommodation.

King has failed to sufficiently plead a plausible claim of failure to accommodate under the ADA. "The ADA prohibits 'discrimination against a qualified individual on the basis of disability in regard to [, inter alia,]…discharge of employees.'" *McBride v. BIC Consumer Prods. Manufacturing Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42. U.S.C. § 12112(a)). Discrimination in violation of the ADA includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability." *Id.* (quoting 42. U.S.C. § 12112(b)(5)(A)). To establish a *prima facie* claim for failure to reasonably accommodate, a Plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodations, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride*, 583 F.3d at 97 (internal quotation omitted).

Here, the fourth factor—whether the employer refused to make reasonable accommodations—is the focus of the parties' disagreement. King alleges that Stanzione's refusal to change her Circular 6 assignment under the assumption that the request was based on technology issues constitutes denial of a reasonable accommodation. Doc. 18 at ¶¶ 19–20; *see also id.* at 75. Specifically, her Circular 6 assignment required her to read messages on Google Chat, which she was unable to do due to her visual disability. *Id.* When King made her disability accommodation request

19

to Stanzione via email, she alleges that she mentioned she was unable to read quickly due to the chemotherapy she received for one of her cancers.  Doc. 18 at ¶ 20.  The Department argues that Plaintiff's claim is conclusory, and that King failed to allege which assignment she chose and whether she complied with the deadline for selecting her assignment.  Doc. 21 at 30.  King asserts that Stanzione's September 22, 2022 email stating, "Your professional period assignment for Period 6 remains in effect at this time" indicates that the Department "failed to engage in a cooperative dialogue and explore potential accommodations."  Doc. 24 at 26.  She further argues that the Department's reasons for denying her request are pretextual and notes that even if there were "legitimate non-discriminatory and non-retaliatory reasons for their actions, that in an issue to be decided on summary judgment, not at the motion to dismiss stage.  *Id.*  The Department alleges that King acknowledges that after providing a doctor's note, she was no longer required to participate in the Google Chat.  Doc. 25 at 14.

To the extent that King alleges that the Department failed to accommodate her disability by denying her specific request, this claim fails.  As acknowledged by both parties, King was not required to participate in her Circular 6 assignment once she provided a doctor's note, and Stanzione said that he would not require King to participate on Google Chats anymore.  Doc. 18 at ¶ 22; *see also* Doc. 18 at 76.  The Department therefore did accommodate King's request.  Furthermore, as alleged by the Department, there is uncertainty surrounding whether or not King even correctly made a timely request for her desired Circular 6 assignment.  Doc. 21 at 30.  In addition, to the extent that the Department did deny her request for a change in Circular 6 assignment, King has not shown that the Department's actions were discriminatory.   "An employer is not required to provide every accommodation a disabled employee may request, as long as the accommodation provided is reasonable."  *See Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 486–87 (S.D.N.Y. 2008) (citing *Fink v. N.Y.C Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)).  Accordingly, King's claim of failure to accommodate is dismissed.

### G.  King Fails to Plead a Retaliation Claim.

Retaliation claims pursuant to Title VII and the ADA are analyzed under the *McDonnell Douglas* burden-shifting evidentiary framework.  *See Littlejohn*, 795 F.3d at 315-16 (Title VII); *Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016) (ADA and ADEA); *Cain v. Mandl Coll. of Allied Health, Mandl Coll., Inc.*, No. 14-cv-1729 (ER), 2016 WL 5799407, at *6 (S.D.N.Y. Sept. 30, 2016) (RA); *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011) (NYSHRL and NYCHRL).

To plead a *prima facie* case of retaliation under Title VII, the ADA, the ADEA, or the RA, a plaintiff must show:  "(1) [she] was engaged in an activity protected by [the applicable statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  *Palummo v. St. Vincent's Medical Center*, 4 F. App'x 99, 102 (2d Cir. 2001).  A causal connection can be established:  "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Board of Education.*, 232 F.3d 111, 117 (2d Cir. 2000) (internal citation omitted).

Here, King sufficiently pleads facts to support the first three factors but fails to plead facts to support a causal connection.  *First*, there is no question that King's three NYSDHR complaints—dated November 25, 2019, November 8, 2022, and December 27, 2022—and the filing of this action on August 28, 2023 are protected activities.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("[A]ttempts to assert [ ] rights against discrimination are protected activities.").  *Second*, King also alleges that, upon information and belief, Stanzione received a copy of the second NYSDHR complaint.  Doc. 18 at ¶ 31.  *Third*, despite still being employed and being at the top of the Department's salary scale, King suffered an adverse employment action:  she received

several allegedly unwarranted disciplinary letters starting in 2019 and a disproportionately heavy workload, and she also lost workdays, salary, and CAR days as a result of those letters. *Id.* ¶ 34; Doc. 24 at 29; *Chung v. City of New York*, 605 Fed.Appx. 20, 22 (2d Cir. 2015) (noting that adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, [or] a material loss of benefits"). Furthermore, since filing her amended complaint on September 6, 2026, King is now facing termination of her tenure—a proceeding she "believe[s]" she is being subjected to as retaliation for her claims against Defendants. Doc. 26 at 1.

The Department alleges that King failed to establish a causal connection between the protected activity and the adverse actions because she received at least one disciplinary letter *before* she filed her first NYSDHR complaint. Doc. 21 at 31–33; Doc. 25 at 13. However, the test for inferring a causal connection focuses more on the overall temporal proximity.[7] "To show causation indirectly by means of temporal proximity, the temporal proximity must be very close." *Vega v. Department. of Education*, No. 18-cv-6221 (ER), 2020 WL 1505564, at *10 (S.D.N.Y. Mar. 30, 2020) (internal quotations omitted); *see also Galimore v. City University of N.Y. Bronx Community College*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009). "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *See Galimore*, 641 F. Supp. 2d at 288.

Here, King received several disciplinary letters beginning on October 25, 2019 and continuing through the 2024-2025 school year. Most pertinent, she received four disciplinary letters within the span of two weeks in October 2022—nearly three years *after* she filed her first NYSDHR complaint and several weeks before filing her second

---

[7] The Court does not reach the argument that cases in which at least one negative employment action occurred *before* the employee filed a complaint necessarily preclude an inference of causation.

complaint. Doc. 18 at ¶¶ 24–28. Therefore, the passage of years between King filed her first complaint and the bulk of the disciplinary letters she received does not allow for an inference of causation. Although King received two disciplinary letters shortly after filing her second NYSDHR complaint, *see* Doc. 18 at ¶¶ 33–36, the fact that she had received several other letters *immediately* before she filed the complaint weighs against an inference of a causal connection.[8]

The Department further argues that King's retaliation claim is baseless because the disciplinary letters were due to her inappropriate behavior towards another colleague or student. Doc. 25 at 13 (citing Doc. 18 at ¶¶ 13, 27, 33). A plaintiff who is "demonstrably at risk" of being disciplined for legitimate reasons prior to engaging in protected activity cannot "rely solely on temporal proximity" to establish retaliation. *Bergesen v. Manhattanville College*, No. 20-cv-3689 (KMK), 2021 WL 3115170, at *8 (S.D.N.Y. July 20, 2021) (citing *Catanzaro v. City of New York*, No. 10-cv-1825 (JSR), 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011), *aff'd*, 486 F. App'x 899 (2d Cir. 2012)). Here, inappropriate behavior towards students or colleagues does not constitute protected activity, and, presumably, all teachers are subject to the same disciplinary policies when such inappropriate behavior is involved.

Accordingly, Defendants' motion to dismiss King's retaliation claim under Title VII, the ADA, ADEA, RA, the NYSHRL, and the NYCHRL is granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically:

- King's Title VII, ADA, and RA claims against Stanzione and Valit are DISMISSED with prejudice;

---

[8] *See Lee v. Saul*, No. 19-cv-6553 (PGG), 2022 WL 873511, at *12 (S.D.N.Y. Mar. 23, 2022) ("Given the numerous complaints and lawsuits [p]laintiff has filed during his employment at the SSA, there was rarely a time that [the SSA] could have taken action against [plaintiff] that would not have been recently preceded by some complaint that [he] believes is subject to ... protection." (internal quotation marks omitted)).

- King's NYSHRL and NYCHRL discrimination claims are DISMISSED with prejudice, as they are time-barred;

- King's Title VII, ADA, and RA claims against the Department are DISMISSED without prejudice; and

- Defendants' motion to dismiss the ADEA claim against the Department is DENIED.

King may file a Second Amended Complaint, titled as such, asserting the Title VII, ADA, RA claims against the Department, if at all, on or before August 21, 2025.   Otherwise, the matter will go forward only with respect to the ADEA claim.

It is SO ORDERED.

Dated:    July 24, 2025
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.